**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

Steve Laster       )
           )
    Plaintiff,    )
           )
v.           )  No. 17 CV 50041
           )  Magistrate Judge Iain D. Johnston
Nancy A. Berryhill, Acting   )
Commissioner of Social Security,[1] )
           )
    Defendant.   )

## MEMORANDUM OPINION AND ORDER

In this Social Security disability appeal, plaintiff raises two arguments. One is that the administrative law judge ("ALJ") failed to include alleged postural limitations, caused by plaintiff's back problems, into the residual functional capacity assessment. The other argument, which is plaintiff's first and primary argument, is that the ALJ failed to consider all the relevant evidence about plaintiff's work as a telemarketer a decade earlier. Although the latter argument focuses on a smaller portion of the ALJ's ruling, the Court finds that it warrants a remand.

Plaintiff, who is now 61 years old, applied for disability benefits in 2013. In the ALJ's 2015 ruling, she found that plaintiff could only do sedentary work. Under Social Security rules, given plaintiff's age, he would qualify as disabled unless one of his past relevant jobs involved sedentary work. Among plaintiff's many jobs over the last decade, the telemarketing job was the only one that was sedentary.

But there were several factual discrepancies about the nature of this job. On a Work History Report (Ex. B4E), which plaintiff completed several years before the hearing, he wrote that he worked from July 2003 to December 2004 (a period of 17 to 18 months), and that he

---

[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).

worked seven hours per day, five days a week, and made $8.00 per hour. R. 194, 197. The answers on this form were handwritten, and it is not known whether plaintiff consulted any documents or simply relied on his memory.

In a pre-hearing brief, submitted shortly before the 2015 hearing, plaintiff's attorney discussed this particular job in the following paragraph:

> For a very short period of time, my client unsuccessfully was a tele marketer. He could not do that job because of his radicular pain. He is only able to sit for thirty minutes and then must stand for fifteen minutes. He can sit/stand for about two hours before he has to lie down to relieve his pain. My client spends most of his day lying down to relieve pain. He can walk approximately half a block before the pain stops him. The pain is in both legs and he has a toe that hurts him all the time. He previously had a left broken arm which he has not treated for, but it still gives him a quite a bit of [a] problem.

Ex. B11E.

At the hearing, the ALJ began by asking about the telemarketing job referred to in the above paragraph, saying that the job "confused [her] a little bit." R. 26. She apparently initially thought that this job was after the alleged onset date. Plaintiff then testified with his counsel asking questions first. Counsel did not raise the telemarketing job. The ALJ then asked questions, focusing mostly on details about plaintiff's earlier jobs. At several points, plaintiff was unsure about the details of these jobs. *See* R. 36 ("I think I must have my dates—my years— maybe I have my years wrong."); R. 37 ("Somehow I got my yearly dates mixed up."). The ALJ then asked specifically about the telemarketing job "back in 2003, 2004." *Id.* (The telemarketing job was for Hammer Marketing.) Plaintiff testified that he only worked as a telemarketer for two months because he "couldn't make the sales," but that he was able to stay on with the company for a longer period by working as a handyman rather than a telemarketer. *Id.*[2] The ALJ did not

---

[2] *See* R. 37 ("I couldn't make the sales. So I came to work one morning and they had no lights, so I became the maintenance man, and then they was bringing in furniture and so I was putting it together. So it was just about me saving my job but not actually doing any telemarketing.").

ask plaintiff how long he worked in total at Hammer Marketing, nor did the ALJ ask plaintiff any details about his pay and hours worked. The only other reference during the hearing to the telemarketing job was at the end when the ALJ questioned the vocational expert. The ALJ then observed that there was a "conflict in the evidence" about whether plaintiff did the telemarketing work the whole time or instead switched to handyman work after two months. R. 40.

In the ALJ's decision, she discussed this issue in the following three paragraphs at the end of the decision:

> The claimant originally reported that between July 2003 and December 2004, he worked 5 days per week for 7 hours per day as a telemarketer, which involved sitting, writing, and talking on the telephone, and was paid $8 per hour (Exhibit B4E). The claimant also did more strenuous work before, after, and in overlapping periods, and sat for 6 1/2 hours during the telemarketing job; which contradicts the claimant's representative's assertion that the work as a telemarketer was unsuccessful because the claimant could only sit for thirty minutes and stand for 15 minutes due to radicular pain (Exhibits B4E and B11E).

> With leading questions by his representative, the claimant made an allegation that his work as a telemarketer was also a maintenance job and then that his brother performed the job for him. The undersigned does not accept these allegations as they are contradicted by the claimant's own statements earlier in his claim for benefits. This attempt at deflection of the quality of past relevant work as well as the claimant's obvious minimizing of the handyman work he has done [at] odd jobs for in kind remuneration detracted from the overall credibility of the claimant's allegations.

> The vocational expert testified that it takes 30 to 45 days to learn an SVP 3 job and the telemarketer position would also require only 30 to 45 days to learn. Therefore, the undersigned finds that the totality of the evidence shows the claimant performed the telemarketing job for 7 hours per day 5 days per week earning $8 per hour for 17 months, and earning above substantial gainful activity levels which meets the criteria for being considered past relevant work.

R. 17. The last paragraph refers to plaintiff's earnings at Hammer Marketing being "above substantial gainful activity levels." Although the ALJ did not total up the amounts, this information would mean that plaintiff earned about $7,000 in 2003 and $14,000 in 2004.

Plaintiff believes that the telemarketing job did not qualify as substantial gainful activity because plaintiff was unsuccessful at that job and stopped after only two months. However, even accepting the ALJ's rejection of this assertion, plaintiff argues that the ALJ's analysis is flawed because the ALJ failed to consider two other pieces of evidence.

The first piece of evidence, which plaintiff asserts is the "most clear cut evidence" in the file, is the FICA earnings statement for plaintiff's jobs. *See* Ex. B4D. This statement indicates that plaintiff made the following amounts while working for Hammer Marketing: $641.25 in 2003; $5,400 in 2003; and $108 in 2004. This information contradicts the ALJ's assumptions. Under the version of the facts accepted by the ALJ, plaintiff did not work for Hammer Marketing at all in 2002 and thus made no money, and he then worked there for approximately half a year in 2003, making somewhere around $7,000, and then worked for a full year in 2004, making somewhere around $14,000. In short, the dollar amounts relied on by the ALJ are larger than those indicated in the earnings statement. The larger amounts are significant because, if accepted, they would push plaintiff's earnings above the threshold yearly amount for qualifying as substantial gainful activity, which (according to plaintiff and undisputed by the Government) was $9,600 on a yearly basis in 2003. Stated differently, if the ALJ had accepted the numbers from the earnings statement as being accurate, then the telemarketing job would not have qualified as past relevant work and plaintiff would qualify as disabled.

Plaintiff complains that the ALJ did not consider this important piece of information. It is undisputed that the ALJ never referred to the earnings statement (Ex. B4D). The failure to do so is surprising because, in this Court's experience, ALJs routinely cite to the earnings statement whenever there is any suggestion that it contradicts a claimant's testimony. This is presumably because ALJs believe that these statements provide objective and contemporaneous evidence

from a third party. If the shoe were on the other foot and the plaintiff were relying on his memory to dispute the accuracy of an earnings statement, the Court doubts that an ALJ would simply ignore the earnings statement and accept the testimony at face value. In sum, the ALJ should have acknowledged and discussed the earnings statement given that it was directly relevant to the issue at hand and because it differed sharply from the version of facts the ALJ took as true. *See Thomas v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (an ALJ may not ignore a line of evidence contrary to his conclusion).

The second piece of evidence relied on by plaintiff, though perhaps less powerful, is plaintiff's Adult Disability Report. Ex. B2E. On this report, which was also completed before the hearing, plaintiff indicated that he worked at Hammer Marketing from 2002 to 2004, four days a week, five hours a day, earning $5,000 a year. R. 176. This document presents yet another version of the facts. According to plaintiff, this version of the facts is more consistent with the earnings statement. The ALJ failed to discuss this document too.

In sum, although plaintiff does not say so explicitly, plaintiff's theory is that he mistakenly filled out the Work History Report by misremembering some of the details about his work for Hammer Marketing. In support of this theory, plaintiff notes that he was remembering details from ten years prior.

In its response brief, the Government acknowledges that the FICA earnings statement is "inconsistent with" plaintiff's Work History Report. Dkt. #13 at 7. The Government then falls back on the general assertion that an ALJ is free to credit "one particular version of events" in resolving an evidentiary dispute. However, other than relying on this blanket statement, the Government does not otherwise engage with plaintiff's specific arguments. The Government has no explanation for why the ALJ was justified in simply ignoring the earnings statement and the

Adult Disability Report. The Government does not suggest that the failure to consider these documents was harmless error or that there is some obvious explanation to reconcile the discrepancies.  In sum, contrary to the ALJ's claim that she considered the "totality" of the evidence relating to the telemarketing job, she did not do so.

There is one final point on this topic. Plaintiff's argument above did not directly challenge the ALJ's credibility finding that plaintiff did not do the telemarketing job for only two months. The ALJ's rationale was that plaintiff did "more strenuous work before, after, and in overlapping periods," a finding that the ALJ believed was at odds with counsel's pre-hearing brief stating that plaintiff had trouble sitting for extended periods. But a question arises about whether the ALJ's explanation was based on a fair summary of plaintiff's position. At the hearing, plaintiff never stated that he could not do the telemarketing job because of sitting difficulties. Instead, he stated that he was unable to "make the sales." Rather than relying on this testimony, the ALJ relied on the argument in the pre-hearing brief. However, after reading this brief, the Court is not clear whether counsel was even making the argument that plaintiff could not sit for extended periods *in 2003-04*. It may be instead (and the Court concedes that the text is ambiguous) that counsel was merely stating that plaintiff's *present condition* would not allow him to do any telemarketing jobs *in the future.* This argument would fit with plaintiff's theory that his back pain significantly worsened in 2011. This is another area that should be further explored on remand. [3]

Having concluded that a remand is required on this issue, the Court will not address plaintiff's other argument because it may be moot depending on how the ALJ rules on the above

---

[3] As for the ALJ's observation that plaintiff's jobs before and after the telemarketing job required more strenuous labor, this fact arguably supports plaintiff's position because, as plaintiff notes, his work history "predominantly" consisted of "medium to heavy duty labor" jobs such as factory laborer and construction worker, thus making the telemarketing job the outlier in the bunch. Dkt. #12 at 1.

issue and because it would require a longer, more fact-intensive analysis of the plaintiff's medical issues.

On remand, the ALJ should consider all the evidence discussed above and resolve these questions about plaintiff's telemarketing work. As plaintiff suggests, if the record remains unclear, the ALJ could further develop the record by, for example, obtaining plaintiff's employment records from Hammer Marketing.

For the foregoing reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and this case is remanded for further consideration.


Date:  April 19, 2018                           By:  _____
                                                     Iain D. Johnston
                                                     United States Magistrate Judge